**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| Industrial Energy Consumers of America, | ) | |
| Resale Power Group of Iowa, | ) | |
| Coalition of MISO Transmission Customers, | ) | |
| Wisconsin Industrial Energy Group, | ) | Case No. 23-1334 |
| Petitioners, | ) | |
| v. | ) | |
| Federal Energy Regulatory Commission, | ) | |
| Respondent. | ) | |

**PETITION FOR REVIEW**

Pursuant to Section 313 of the Federal Power Act, 16 U.S.C. § 825*l*, and Rule 15(a) of the Federal Rules of Appellate Procedure ("FRAP"), the Industrial Energy Consumers of America ("IECA"), the Resale Power Group of Iowa ("RPGI"), the Coalition of MISO Transmission Customers ("CMTC"), and the Wisconsin Industrial Energy Group ("WIEG") (collectively, "Petitioners"), hereby petition this Court for judicial review of the following orders issued by Respondent, Federal Energy Regulatory Commission ("Commission"):

1. *ITC Midwest, LLC,* Order on Transmission Rate Incentive, Docket No. ER23-2033-000, 184 FERC ¶ 61,083 (Aug. 8, 2023) ("August 8 Order");

2. *ITC Midwest, LLC,* Notice of Denial of Rehearing by Operation of Law and Providing for Further Consideration, Docket No. ER23-2033-001, 185 FERC ¶ 62,013 (Oct. 10, 2023) ("Denial Notice"); and

3. *ITC Midwest, LLC,* Order Addressing Arguments Raised on Rehearing, Docket No. ER23-2033-001, 185 FERC ¶ 61,123 (Nov. 16, 2023) ("November 16 Rehearing Order").

Copies of the August 8 Order, the Denial Notice, and the November 16 Rehearing Order are attached hereto as **Exhibit A**, **Exhibit B**, and **Exhibit C**, respectively. The Court should note that on September 7, 2023, Petitioners timely filed a request for rehearing of the August 8 Order.[1]

Respectfully submitted,

_/s/ James Harrison Holt_
James Holt
Betts & Holt LLP
1101 Connecticut Ave., N.W.
Suite 450
Washington, D.C. 20036
202-530-3380
JHH@bettsandholt.com

Katherine Ann Wade
Betts & Holt LLP
1101 Connecticut Ave., N.W.
Suite 450
Washington, D.C. 20036
202-530-3380
KAW@bettsandholt.com
(_admission pending_)

_Counsel for the Resale Power Group of Iowa_

_/s/ Kenneth R. Stark_
Kenneth R. Stark
McNees Wallace & Nurick LLC
100 Pine Street
Harrisburg, PA 17101
717-237-5378
kstark@mcneeslaw.com

Robert A. Weishaar, Jr.
McNees Wallace & Nurick LLC
1200 G. Street, NW, Suite 800
Washington, DC 20005
202-898-0688
bweishaar@mcneeslaw.com

_Counsel for the Industrial Energy Consumers of America and the Coalition of MISO Transmission Customers, and on behalf of the Wisconsin Industrial Energy Group_

Dated:  December 4, 2023

---

[1] _Norwood v. FERC_, 906 F.2d 772, 775 (D.C. Cir. 1990) (requiring an aggrieved party to file a request for rehearing at FERC prior to a petition for review in appellate court).

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA**

Industrial Energy Consumers of America,   )
Resale Power Group of Iowa,   )
Coalition of MISO Transmission Customers,   )
Wisconsin Industrial Energy Group,   )   Case No. _____
      Petitioners,   )
      v.   )
Federal Energy Regulatory Commission,   )
      Respondent.   )

**CORPORATE DISCLOSURE STATEMENTS**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure ("FRAP") and D.C. Circuit Rule 26.1, Petitioners hereby submit their respective corporate disclosure statements. Petitioners represent a broad array of consumer-side stakeholders, including commercial and industrial customers and municipal utilities, located within the service territory of the Midcontinent Independent System Operator, Inc. ("MISO"). Petitioners were active participants in the Commission proceeding in which the orders and the notice subject to review were issued and sought rehearing of the Commission's August 8 Order. Petitioners and/or the stakeholders they represent are subject to, and will be affected by, the orders and notice under review.

## CORPORATE DISCLOSURE STATEMENT OF
## THE INDUSTRIAL ENERGY CONSUMERS OF AMERICA

The Industrial Energy Consumers of America ("IECA") is a nonpartisan association of leading manufacturing companies with $1.1 trillion in annual sales, over 12,000 facilities nationwide, and with more than 1.8 million employees worldwide. It is an organization created to promote the interests of manufacturing companies through advocacy and collaboration for which the availability, use and cost of energy, power or feedstock play a significant role in their ability to compete in domestic and world markets. IECA membership represents a diverse set of industries including: chemicals, plastics, steel, iron ore, aluminum, paper, food processing, fertilizer, insulation, glass, industrial gases, pharmaceutical, building products, automotive, independent oil refining, and cement.  IECA does not issue securities to the public and is not owned by any publicly held company.

## CORPORATE DISCLOSURE STATEMENT OF
## THE RESALE POWER GROUP OF IOWA

The Resale Power Group of Iowa ("RPGI") is a special-purpose governmental entity organized pursuant to Chapter 28E of the Code of Iowa to purchase electric supply, transmission, and related services as an agent for its members. RPGI does not issue stock or debt securities and does not have a parent company.

RPGI's members are 24 Iowa municipal utilities, one cooperative, and one privately-owned utility. A list of RPGI's members is attached to this Corporate Disclosure Statement as **Attachment A**.

RPGI's members hold joint ownership interests in its assets. As local government entities, these members do not issue shares and, to the best of RPGI's knowledge and belief, do not issue debt securities to the public.

# **ATTACHMENT A**

## RPGI MEMBERS

Amana Society Service Co.

Anita Municipal Utilities

City of Afton

City of Buffalo

City of Danville

City of Guttenberg

City of Long Grove

City of Pocahontas

City of West Liberty

City of West Point

City of Whittemore

Coggon Municipal Utilities

Dysart Municipal Utilities

Farmers Electric Cooperative-Kalona

Grand Junction Municipal Utilities

Hopkinton Municipal Utilities

La Porte City Utilities

Mt. Pleasant Municipal Utilities

New London Municipal Utilities

Ogden Municipal Utilities

Sibley Municipal Utilities

State Center Municipal Utilities

Story City Municipal Electric Utility

Tipton Municipal Utilities

Traer Municipal Utilities

Vinton Municipal Electric Utility

## CORPORATE DISCLOSURE STATEMENT OF
## THE COALITION OF MISO TRANSMISSION CUSTOMERS

The Coalition of MISO Transmission Customers ("CMTC") is a continuing *ad hoc* association of large industrial and commercial end users of electricity in the Midcontinent Independent System Operator, Inc. region operated for the purposes of representing the interests of large energy consumers before regulatory, judicial, and legislative bodies.  CMTC does not issue securities to the public and is not owned by any publicly held company.

## CORPORATE DISCLOSURE STATEMENT OF
## THE WISCONSIN INDUSTRIAL ENERGY GROUP

The Wisconsin Industrial Energy Group ("WIEG") is a voluntary member association consisting of large industrial and commercial end users of electricity in the State of Wisconsin which is located in the Midcontinent Independent System Operator, Inc. region. WIEG is operated for the purpose of representing the interests of large energy consumers. WIEG does not issue securities to the public and is not owned by any publicly held company.

Respectfully submitted,

 /s/ James Harrison Holt
James Holt
Betts & Holt LLP
1101 Connecticut Ave., N.W.
Suite 450
Washington, D.C. 20036
202-530-3380
JHH@bettsandholt.com


Katherine Ann Wade
Betts & Holt LLP
1101 Connecticut Ave., N.W.
Suite 450
Washington, D.C. 20036
202-530-3380
KAW@bettsandholt.com
(admission pending)


*Counsel for the Resale Power
Group of Iowa*

/s/ Kenneth R. Stark
Kenneth R. Stark
McNees Wallace & Nurick LLC
100 Pine Street
Harrisburg, PA 17101
717-237-5378
kstark@mcneeslaw.com

Robert A. Weishaar, Jr.
McNees Wallace & Nurick LLC
1200 G. Street, NW, Suite 800
Washington, DC 20005
202-898-0688
bweishaar@mcneeslaw.com

*Counsel for the Industrial Energy
Consumers of America and the
Coalition of MISO Transmission
Customers, and on behalf of the
Wisconsin Industrial Energy Group*

Dated:  December 4, 2023

# EXHIBIT A

184 FERC ¶ 61,083
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Willie L. Phillips, Acting Chairman;
James P. Danly, Allison Clements,
and Mark C. Christie.

ITC Midwest, LLC                                          Docket No.  ER23-2033-000

ORDER ON TRANSMISSION RATE INCENTIVE

(Issued August 8, 2023)

1.      On May 30, 2023, ITC Midwest, LLC (ITC Midwest) submitted a request under
section 205 of the Federal Power Act (FPA),[1] Order No. 679,[2] and the Commission's
November 15, 2012 policy statement on transmission incentives[3] for incentive rate
treatment of ITC Midwest's investment in the Skunk River-Ipava 345 kV Long Range
Transmission Plan project (Project).  Specifically, ITC Midwest requests authorization to
recover 100% of prudently incurred costs associated with its investment in the Project if
the Project is cancelled or abandoned for reasons beyond ITC Midwest's control
(Abandoned Plant Incentive).  As discussed below, we grant ITC Midwest's request.

I.      **Background**

2.      ITC Midwest states that it is a wholly owned subsidiary of ITC Holdings Corp.,
which in turn is majority owned by Fortis Inc. and minority owned by GIC Private
Limited.  ITC Midwest also states that it is a transmission-owning member of MISO, and
an independent transmission company operating primarily in Iowa, with portions of its
system in Minnesota, Illinois, and Missouri.  ITC Midwest states that it owns more than

---

[1] 16 U.S.C. § 824d.

[2] *Promoting Transmission Inv. through Pricing Reform*, Order No. 679, 116 FERC
¶ 61,057, *order on reh'g*, Order No. 679-A, 117 FERC ¶ 61,345 (2006), *order on reh'g*,
119 FERC ¶ 61,062 (2007).

[3] *Promoting Transmission Inv. through Pricing Reform*, 141 FERC ¶ 61,129
(2012) (Transmission Incentives Policy Statement).

6,600 miles of transmission lines and 208 electric transmission substations in Iowa, Minnesota, Illinois, and Missouri.[4]

3.      In support of its application, ITC Midwest states that the Board of Directors of MISO unanimously approved a portfolio of 18 transmission projects as part of the Long-Range Transmission Plan (LRTP) Tranche 1 Portfolio in July 2022 to provide reliable and economic energy delivery to meet future reliability needs in MISO.[5] ITC Midwest explains that the Project is one element of the LRTP Tranche 1 Portfolio's East-Central transmission corridor across the MISO footprint from Iowa to Michigan, which will increase power transfer capability across the MISO region and will resolve thermal and voltage constraints in Iowa, Illinois, Missouri, Indiana, and Michigan.[6] In being selected for the LRTP Tranche 1 Portfolio, ITC Midwest asserts that MISO has determined that the Project will help alleviate congestion, reduce costs by allowing more low-cost resources to be integrated and avoiding future reliability upgrades, enhance grid reliability, and reduce carbon emissions.[7] Further, ITC Midwest states that MISO found that the Project, in conjunction with the other projects in the LRTP Tranche 1 Portfolio's East-Central transmission corridor, would address 77 unique thermal violations.[8]

4.      ITC Midwest states that the Project will consist of approximately 125 miles of new 345 kV line, depending on the final approved route, to be constructed between Skunk River Substation located in Henry County, Iowa, and Ipava Substation located in Fulton County, Illinois. ITC Midwest explains that it will own and construct the Iowa portion of the 345 kV line, while the Illinois portion will be owned and constructed by a third party, which will be selected through the MISO Competitive Developer Selection Process (Selected Developer).[9] ITC Midwest states that the Project will cross the Mississippi River and that ITC Midwest's segment will connect with the Selected Developer's Illinois segment. ITC Midwest further explains that it will work with the Selected Developer to determine cost and construction responsibility for the Mississippi

---

[4] Transmittal at 2-3.

[5] *Id.* at 1 (citing Ex. 1, attach. A. *MTEP21 Report Addendum: MISO Long Range Transmission Planning Tranche 1 Executive Summary*, at 1 (Apr. 13, 2022) (2021 MTEP Report), https://cdn.misoenergy.org/MTEP21%20Addendum-LRTP%20Tranche%201%20Report%20with%20Executive%20Summary625790.pdf.).

[6] *Id.* at 3.

[7] *Id.* at 5 (citing 2021 MTEP Report at 3).

[8] *Id.* (citing 2021 MTEP Report at 40).

[9] *Id.* at 1-3.

Docket No. ER23-2033-000    - 3 -

River crossing.[10]  The 2021 MISO Transmission Expansion Plan (MTEP) Report Addendum:  LRTP Tranche 1 states that the entire Project has an expected in-service date of the end of 2029 and will have an estimated cost of $594 million.[11]

5.    ITC Midwest requests an effective date of July 30, 2023.[12]  ITC Midwest asserts the importance of timely action to ensure that 100% of prudent construction costs incurred after its requested effective date are eligible for recovery if the Project is abandoned for reasons outside of ITC Midwest's control.[13]

## II.    Notice of Filing and Responsive Pleadings

6.    Notice of ITC Midwest's filing was published in the *Federal Register*, 88 Fed. Reg. 37,238 (June 7, 2023), with interventions and protests due on or before June 20, 2023.  Alliant Energy Corporate Services, Inc., Association of Businesses Advocating Tariff Equity, LS Power Midcontinent, LLC, and NextEra Energy Transmission Midwest, LLC filed timely motions to intervene.  Timely motions to intervene and a joint protest were filed by the Industrial Energy Consumers of America, Coalition of MISO Transmission Customers, Resale Power Group of Iowa, and Wisconsin Industrial Energy Group (collectively, Consumer Alliance).

7.    On June 30, 2023, ITC Midwest filed a motion for leave to answer and answer to Consumer Alliance's protest.  On July 17, 2023, Consumer Alliance filed a motion for leave to answer and answer.

## III.    Discussion

### A.    Procedural Matters

8.    Pursuant to Rule 214 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.214 (2022), the timely, unopposed motions to intervene serve to make the entities that filed them parties to this proceeding.

9.    Rule 213(a)(2) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.213(a)(2) (2022), prohibits an answer to a protest unless otherwise ordered by the decisional authority.  We accept ITC Midwest's and Consumer Alliance's

---

[10] *Id.* at 1-2.

[11] *Id.*; 2021 MTEP Report at 2.

[12] Transmittal at 2.

[13] *Id.* at 8.

Document Accession #: 20230808-3050     Filed Date: 08/08/2023
Docket No. ER23-2033-000                                                                                          - 4 -

answers because they have provided information that assisted us in our decision-making process.

      **B.**    **Substantive Matters**

      **1.**    **Section 219 Requirements**

10.     In the Energy Policy Act of 2005, Congress added section 219 to the FPA, directing the Commission to establish, by rule, incentive-based rate treatments to promote capital investment in electric transmission infrastructure.[14]  The Commission subsequently issued Order No. 679, establishing the processes by which a public utility may seek transmission rate incentives pursuant to section 219.  Additionally, in November 2012, the Commission issued a Policy Statement providing guidance regarding its evaluation of applications for transmission rate incentives under section 219 and Order No. 679.[15]

11.     Pursuant to Order No. 679, an applicant may seek to obtain incentive rate treatment for a transmission infrastructure investment that satisfies the requirements of section 219, i.e., the applicant must show that "the facilities for which it seeks incentives either ensure reliability or reduce the cost of delivered power by reducing transmission congestion."[16]  Order No. 679 established a process for an applicant to demonstrate that it meets this standard, including a rebuttable presumption that the standard is met if: (1) the transmission project results from a fair and open regional planning process that considers and evaluates projects for reliability or congestion and is found to be acceptable to the Commission; or (2) a project has received construction approval from an appropriate state commission or state siting authority.[17]

12.     In addition to satisfying the section 219 requirement of ensuring reliability or reducing the cost of delivered power by reducing congestion, Order No. 679 requires an applicant to demonstrate that there is a nexus between the incentive sought and the investment being made.  In Order No. 679-A, the Commission clarified that the nexus test is met when an applicant demonstrates that the total package of incentives requested is "tailored to address the demonstrable risks or challenges faced by the applicant."[18]

---

[14] Pub. L. No. 109-58, § 1241, 119 Stat. 594 (2005).

[15] Transmission Incentives Policy Statement, 141 FERC ¶ 61,129.

[16] Order No. 679, 116 FERC ¶ 61,057 at P 76.

[17] *Id.* P 58.

[18] Order No. 679-A, 117 FERC ¶ 61,345 at P 27.

Applicants must provide sufficient support to allow the Commission to evaluate each element of the package and the interrelationship of all elements of the package.[19]  The Commission noted that this nexus test is fact-specific and requires the Commission to review each application on a case-by-case basis.[20]

13.     In the Transmission Incentives Policy Statement, the Commission reaffirmed that the abandoned plant incentive is among the financial and regulatory risk-reducing transmission incentives available pursuant to Order No. 679.[21]

### 2.     Rebuttable Presumption

14.     ITC Midwest asserts that the Project satisfies the rebuttable presumption standard of Order No. 679 because it was selected as a MISO LRTP Tranche 1 Portfolio project.[22]  ITC Midwest explains that the Project is a component of one of 18 LRTP projects approved by the MISO Board of Directors in July 2022, as part of the 2021 MTEP.[23]  ITC Midwest asserts that MISO's MTEP is a process that satisfies the rebuttable presumption requirement that a project is selected through a fair and open regional planning process and notes that MISO selected the Project through the Commission-authorized MTEP process.[24]

15.     ITC Midwest further asserts that the Project provides reliability, economic, and policy benefits.[25]  According to ITC Midwest, MISO stated that the Project, in conjunction with the other projects in the LRTP Tranche 1 Portfolio's East-Central transmission corridor, would resolve 77 unique thermal violations in Iowa, Illinois, Missouri, Indiana, and Michigan, including establishing an East-Central transmission corridor to provide increased power transfer capability and to improve voltage profiles

---

[19] Transmission Incentives Policy Statement, 141 FERC ¶ 61,129 at P 10 (quoting Order No. 679-A, 117 FERC ¶ 61,345 at P 27).

[20] Order No. 679, 116 FERC ¶ 61,057 at P 43.

[21] Transmission Incentives Policy Statement, 141 FERC ¶ 61,129 at PP 11, 14.

[22] Transmittal at 4.

[23] *Id.* at 1 (citing 2021 MTEP Report at 1).

[24] ITC Midwest Answer at 11.

[25] Transmittal, Ex. 1 (Prepared Direct Testimony of Jeffrey W. Eddy), at 7 (Eddy Test.).

Document Accession #: 20230808-3050          Filed Date: 08/08/2023

across the MISO control area.[26]  ITC Midwest argues that the Project, therefore, is entitled to the rebuttable presumption of Order No. 679.[27]

### a.  Commission Determination

16.    The Commission has previously found that projects approved through a regional transmission planning process that evaluated whether the identified transmission projects will enhance reliability and/or reduce congestion are entitled to the rebuttable presumption established under Order No. 679.[28]  In this case, the MTEP transmission planning process, through which the Project was approved, evaluated whether proposed transmission projects will enhance reliability and/or reduce congestion, and satisfies the rebuttable presumption standard of Order No. 679.  Therefore, we find that the Project is entitled to the rebuttable presumption that it meets this requirement of section 219.

### 3.  Abandoned Plant Incentive

### a.  ITC Midwest's Request

17.    ITC Midwest asserts that the need for the Abandoned Plant Incentive for the Project is supported because the Project faces significant regulatory, environmental, financial, and construction risks that could result in ITC Midwest's development of the Project being abandoned for reasons beyond ITC Midwest's control.  ITC Midwest states that development of the Project has not yet reached the stage where ITC Midwest has begun applying for local, state, and federal permits required for development, but that it will be required to seek these authorizations and approvals and ensure that development and construction of the Project is conducted in compliance with underlying rules and regulations.  ITC Midwest explains that, similar to any transmission developer, ITC Midwest has limited insight into environmental factors that will shape the path of the Project and could prevent construction and operation.  In addition, ITC Midwest asserts that large scale energy infrastructure projects, such as the Project, are increasingly facing

---

[26] Eddy Test. Ex. 1 at 7.

[27] Transmittal at 4-5.

[28] *See*, *e.g.*, *Midcontinent Indep. Sys. Operator, Inc.*, 161 FERC ¶ 61,301, at P 14 (2017); *TransCanyon DCR, LLC*, 152 FERC ¶ 61,017, at P 17 (2015) (*TransCanyon*); *Pac. Gas & Elec. Co.*, 148 FERC ¶ 61,195, at P 14 (2014); *Midcontinent Indep. Sys. Operator, Inc.*, 151 FERC ¶ 61,246, at P 15 (2015); *S. Ind. Gas & Elec. Co.*, 125 FERC ¶ 61,124, at P 28 (2008).

challenges in administrative and judicial forums by project opponents that increase the risk that a needed permit will be denied.[29]

18.     More specifically, ITC Midwest states that the Project faces potentially significant financial risks and challenges associated with the regulatory and environmental risks, which could negatively impact financial stability and result in high capital costs.  ITC Midwest argues that the Commission has recognized that transmission development poses inherent financial risks including cash flow risks associated with long lead time facilities being placed into rate base.[30]

19.     Finally, ITC Midwest asserts that it faces risks and challenges in connection with constructing the Project because costs for construction materials, specialized skilled labor, and specialized equipment continue to remain high and fluctuate significantly due to supply chain and labor shortages that resulted from the COVID-19 pandemic.  ITC Midwest further explains that these costs and uncertainty are exacerbated at a macro level by geopolitical unrest, extreme weather events of increased frequency and intensity, and intense competition for scarce resources.[31]

20.     ITC Midwest states that, in accordance with Order No. 679 and Commission precedent, if abandonment is required, ITC Midwest will make an appropriate filing under section 205 demonstrating the prudence of the costs for which recovery is sought before collecting any abandonment costs.  Therefore, ITC Midwest commits to maintaining a zero balance in its Attachment O template for the placeholder associated with the recovery of abandoned plant costs for the Project until the Commission approves such rates in a future section 205 filing.[32]

### b.     Consumer Alliance Protest

21.     Consumer Alliance argues that ITC Midwest's development of the Project is premature and should be rejected due to questionable legality of the assignment of the

---

[29] Transmittal at 6.

[30] *Id.* (citing Transmission Incentives Policy Statement, 141 FERC ¶ 61,129 at P 12).

[31] *Id.*

[32] *Id.* at 8 (citing *ALLETE, Inc.*, 153 FERC ¶ 61,296, at PP 33-34 (2015) (*ALLETE*); *Midcontinent Indep. Sys. Operator, Inc.*, 160 FERC ¶ 61,101 (2017)).

Document Accession #: 20230808-3050     Filed Date: 08/08/2023

Iowa portion of the Project to ITC Midwest.[33]  According to Consumer Alliance, ongoing legal challenges to Iowa's right of first refusal (ROFR) statute's state constitutionality were filed against the state of Iowa and the Iowa Utilities Board and, if such legal challenges prevail, then MISO's assignment of the Iowa portion of the Project could be legally invalid.[34]  Consumer Alliance asserts that, to avoid violating its Tariff, MISO would be required to expeditiously initiate its Competitive Transmission Process for the Project.  Consumer Alliance states that it understands that the ROFR statute litigation is likely to conclude within the next several months.  Because the Project does not have an in-service date until December 31, 2029, and because a significant portion of the Project's Iowa route is located in already-existing easements, Consumer Alliance argues that settling the issue of development authority will not materially delay construction.  Moreover, Consumer Alliance asserts that the consumer benefits to be derived from the entire Project being subject to MISO's Competitive Developer Selection Process should outweigh any concern about modest delays.[35]

22.     Consumer Alliance argues that MISO assigned ITC Midwest the Project pursuant to a state law that is not currently in effect and that is surrounded by legal uncertainty that directly impairs ITC Midwest's eligibility to develop the Iowa portion of the Project.[36]  Consumer Alliance further argues that ITC Midwest has not demonstrated that its ability to proceed is free and clear of any legal impediments arising from the pending ROFR litigation.[37]  It is Consumer Alliance's opinion that the prudence of incurred costs by ITC Midwest for its investment in the Project can be questioned due to ITC Midwest's development authority being under a legal cloud.[38]  Consumer Alliance asserts that, if ITC Midwest chooses to move forward with the Project, it should do so at its own risk and that consumers should not subsidize ITC Midwest for costs it incurs related to its investment in the Project while the question of ITC Midwest's development authority is being determined by the Iowa courts.[39]

---

[33] Consumer Alliance Protest at 11.

[34] *Id.* at 9-11.

[35] *Id.* at 12.

[36] *Id.*

[37] *Id.*

[38] *Id.* at 12-13.

[39] *Id.* at 13.

23.     Moreover, Consumer Alliance argues that, even if ITC Midwest had clear legal authority to proceed with developing the Project, ITC Midwest's request is premature because the scope of the work to be constructed by ITC Midwest has not been finalized.[40] Consumer Alliance contends that ITC Midwest does not at this time have any certainty regarding the degree to which it will be responsible for constructing the Mississippi River crossing, as responsibility for constructing the Mississippi River crossing portion will be determined after the completion of the Competitive Developer Selection Process for the Illinois portion of the Project.[41]  Consumer Alliance argues that the Commission should reject ITC Midwest's request because ITC Midwest's request would sign consumers up for the role of insurers of last resort without full appreciation of the liability they are assuming.[42]

24.     Consumer Alliance further argues that the Commission should reject ITC Midwest's request on the merits because ITC Midwest has not met its burden to demonstrate that its request for the Abandoned Plant Incentive is warranted and will produce just and reasonable rates.[43]  Consumer Alliance explains that ITC Midwest has not tailored its request to the Project's demonstrable risks and challenges because ITC Midwest has not presented detailed factual information to support its assertion that the risks and challenges ITC Midwest faces in developing the Project are appropriately tailored to the Abandoned Plant Incentive.[44]  According to Consumer Alliance, ITC Midwest claims that it identifies three broadly stated risks providing a sufficient detailed factual foundation for the Abandoned Plant Incentive, but ITC Midwest does not supply support for any of the these stated risks.[45]

25.     Consumer Alliance contends that ITC Midwest does not explain in any detail how the need to secure local, state, and federal permits increase the Project's regulatory and environmental risks and challenges.  According to Consumer Alliance, the Project is not a greenfield transmission line, as portions of the new facilities will be built within existing easements, which obviates the risk of securing new easements and lowers the

---

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.* at 14.

[44] *Id.* at 15-16.

[45] *Id.* at 16.

risk of permit denial.[46]  Consumer Alliance asserts that ITC Midwest has not explained how its particular location or configuration for the Project, a large scale infrastructure project, increases permitting risks beyond that presented by a routine project or how the cancellation risk is so exceptional that it requires ratepayers to provide a safety net for its investors.[47]

26.     Consumer Alliance argues that, while ITC Midwest claims to face potentially significant financial risks and challenges, such as cash flow risks associated with long lead time facilities being placed into rate base, ITC Midwest does not seek a construction work in progress incentive, but instead seeks only the Abandoned Plant Incentive to facilitate financing by pre-authorizing the recovery of prudently incurred development costs if the Project is cancelled.  Consumer Alliance contends that ITC Midwest fails to provide a nexus between the requested Abandoned Plant Incentive and the Project's risks and challenges.[48]  In addition, Consumer Alliance argues that, while ITC Midwest claims that regulatory and environmental risks can negatively affect financial stability and result in higher capital costs for the Project, ratepayers deserve more than assertions and generalizations if they are to insure ITC Midwest's development costs associated with the Project.[49]

27.     Consumer Alliance also argues that ITC Midwest cites vague generalities to support its assertion that the Project is presented with construction-related risks and challenges that could result in cancellation.  According to Consumer Alliance, the construction-related risks and challenges that ITC Midwest claims to be presented with are operating norms rather than exceptional or specific to the Project.  Consumer Alliance contends that ITC Midwest fails to explain why it deserves the 100% Abandoned Plant Incentive if the Project is cancelled in lieu of the Commission's 50% cost recovery when large, critical infrastructure projects in other sectors of the economy do not have any such assurance.  Consumer Alliance further contends that, if the Project were subject to MISO's Competitive Transmission Process, the Selected Developer would likely commit to higher levels of cost containment and a cost cap, all of which contrast ITC Midwest's proposal to construct the Project.[50]

---

[46] *Id.*

[47] *Id.* at 16-17.

[48] *Id.* at 17.

[49] *Id.* at 17-18.

[50] *Id.* at 18-19.

28.     Consumer Alliance asserts that ITC Midwest's request falls short of establishing a nexus between the risks the Project faces and the Abandoned Plant Incentive being sought, and that ITC Midwest has demonstrated a fundamental disregard for what it is asking consumers to undertake.  Consumer Alliance argues that ITC Midwest claims that ITC Midwest's request is similar to recent Commission approved abandoned plant incentive requests, notwithstanding that ITC Midwest's only support for its position is that its request is consistent with abandoned plant incentives that the Commission approved for other projects in the 2021 MTEP.  Consumer Alliance further argues that ITC Midwest fails to recognize the specific risks other projects faced in recent Commission approved abandoned plant incentive requests and the comparative advantages ITC Midwest enjoys.[51]

29.     Additionally, Consumer Alliance argues that ITC Midwest has failed to demonstrate that the resulting rates from the Abandoned Plant Incentive will be just and reasonable.  According to Consumer Alliance, ITC Midwest overlooks the other incentives that it receives, such as its return on equity of 10.02%, 25 basis point Transco adder, and 50 basis point Regional Transmission Organization adder, and fails to address the specific rate impacts to the Attachment O-ITC Midwest formula rate.[52]  Consumer Alliance also argues that, while ITC Midwest's request addresses the current regulatory framework that provides transmission owners with a presumption that abandoned plant costs are prudent or recoverable, any prudently incurred plant costs that consumers are required to pay for that do not benefit or serve them should be recovered with a return based upon a lower cost of capital.  Consumer Alliance contends that abandoned plant cost recovery should only be narrowly permitted on a case-by-case basis without any presumption that abandoned plant costs are prudently incurred and that ITC Midwest has failed to demonstrate that its request for the Abandoned Plant Incentive is narrowly tailored to meet the Project's risks and challenges.[53]

### c.     ITC Midwest Answer

30.     ITC Midwest states that none of the issues that Consumer Alliance raises is relevant to the factors that are considered by the Commission when deciding to authorize an abandoned plant incentive.  Additionally, ITC Midwest claims that Consumer Alliance improperly attempts to inject state legal proceedings into this proceeding and suggests

---

[51] *Id.* at 19-20.

[52] *Id.* at 21.

[53] *Id.* at 21-23.

that incentive applications should be held in abeyance if they are subject to ongoing litigation, despite citing no Commission precedent that would support this proposition.[54]

31.    ITC Midwest further argues that Consumer Alliance's assertion that ongoing state court litigation requires the application to be rejected outright is unsupported for several reasons.  ITC Midwest avers that Consumer Alliance's argument relies on the assertion that the Iowa ROFR statute is void *ab initio*, despite the Iowa Supreme Court specifically declining to make such a ruling.[55]  Additionally, ITC Midwest points out that the Iowa Utilities Board recently authorized it to begin holding public outreach meetings to discuss the Project with local communities, which ITC Midwest argues evidences a need for it to begin the development process now in order to construct the Project on time.  Additionally, ITC Midwest counters Consumer Alliance's contention that final resolution of the state court litigation is likely to conclude in the next couple of months.  ITC Midwest argues that requiring an applicant requesting the abandoned plant incentive to demonstrate that it is "free and clear of any legal impediments" imposes a requirement that has never been adopted by the Commission.[56]

32.    ITC Midwest contends that Consumer Alliance's argument that ITC Midwest should not be eligible for incentive rate treatment, because the MTEP process is not sufficiently open and transparent as MISO allowed ITC Midwest to develop the Project based solely on its incumbent status, is an impermissible collateral attack to MISO's filed rate that must be rejected.  ITC Midwest argues that Consumer Alliance has already filed a pending complaint against MISO that if granted would require MISO to use competitive solicitations for all MTEP Multi Value Projects.[57]

33.    ITC Midwest argues that its application is similar to other applications submitted by other developers that have been recently granted the abandoned plant incentive by the Commission.[58]  ITC Midwest further points out that the abandoned plant incentive only grants the developer the opportunity to collect up to 100% of prudently made investments.  ITC Midwest argues that Consumer Alliance correctly recognizes that ITC

---

[54] ITC Midwest Answer at 2-3.

[55] *Id.* at 3, 9 (citing *LS Power Midcontinent, LLC v. State*, Appellant's Response to Petitions for Rehearing at 10-11, 21-22, Case No. 21-0696 (April 19, 2023); *LS Power Midcontinent, LLC v. State*, 988 N.W.2d 316 (Iowa 2023), *reh'g denied* (Apr. 26, 2023) (*LS Power*)).

[56] *Id.* at 9-10 (quoting Consumer Alliance Protest at 10).

[57] *Id.* at 14-15.

[58] *Id.* at 3.

Midwest "moves forward at its own risk" as future cost recovery associated with abandonment would be subject to a section 205 filing that demonstrates the prudency of the investments and which would be subject to challenge by interested parties at that point in time. ITC Midwest argues that rejecting its application at this stage would fundamentally alter longstanding Commission policy and precedent, which carefully balances the needs of developers to mitigate risks early in the development process while preserving the ability of customers to later challenge the prudency of costs if a project is abandoned.[59]

34.     ITC Midwest argues that its application is supported by testimony that demonstrates that the Abandoned Plant Incentive request is narrowly tailored to mitigate specific risks associated with the development of the Project, including regulatory approvals from various state and federal agencies and local approvals such as zoning modifications or exemptions for substation construction, county road permits and drainage district approvals, in addition to legal challenges to such approvals.[60] Furthermore, ITC Midwest argues that, contrary to Consumer Alliance's arguments, the Project is not a routine investment made in the ordinary course of expanding the system to provide safe and reliable transmission service, but instead is a project selected as part of the "largest and most complex transmission study effort in MISO's history."[61]

35.     ITC Midwest argues that, despite Consumer Alliance's contention otherwise, ITC Midwest has narrowly tailored the request, and the supporting testimony filed with its application presents the same significant operational, legal, regulatory, and environmental risks faced by other high voltage long-range transmission projects that the Commission has routinely authorized for abandoned plant incentive rate treatment.[62]

36.     ITC Midwest further argues that Consumer Alliance ignores the fact that ITC Midwest will be required to file for recovery of any Abandoned Plant Incentive pursuant to section 205 when arguing that the Abandoned Plant Incentive is not narrowly tailored because it does not reflect the fact that the Project may use existing easements and rights of way. ITC Midwest contends that Consumer Alliance's argument that, because ITC Midwest enjoys Commission-approved formula rates, it is distinguishable from other MISO LRTP projects that have been granted similar incentives is an impermissible collateral attack. Further, ITC Midwest avers that the Commission's transmission

---

[59] *Id.* at 3-4, 10.

[60] *Id.* at 7, 12.

[61] *Id.* at 12 (quoting 2021 MTEP Report at 1).

[62] *Id.*

incentive policies and precedent do not make a distinction based on whether an applicant or its affiliates have accepted Commission formula rates.[63]

37.     ITC Midwest further argues that the Commission should not penalize it for deciding to engage in prudent planning and development practices by later consulting with the Selected Developer to determine which entity is best positioned to construct the segment of the Project for the Mississippi River crossing.  ITC Midwest commits that, if it is later determined that the Selected Developer should be responsible for the Mississippi River crossing, and the Project is ultimately abandoned for reasons outside of its control, ITC Midwest would not seek to recover any costs associated with the Mississippi River segment.  ITC Midwest also argues that it would benefit customers for the Iowa and Illinois developers to fully consider the permitting risks and other regulatory approvals needed for the crossing before deciding on responsibility.  ITC Midwest asserts that requiring it to wait for the outcome of the competitive solicitation process before it can seek the Abandoned Plant Incentive as Consumer Alliance argues, would "unnecessarily prejudice ITC Midwest and make it hostage to the delays inherent in the competitive solicitation process."[64]

### d.     Consumer Alliance Answer

38.     Consumer Alliance argues that ITC Midwest's right to construct and own the Project is derived solely from Iowa's ROFR statute, which the Iowa Supreme Court has enjoined, recognizing that the public interest of consumers is harmed due to the competition avoidance purpose of the Iowa ROFR statute.[65]  Consumer Alliance asserts that ITC Midwest's request for the Abandoned Plant Incentive seeks to ensure that consumers bear the risk of its actions in advancing the Project notwithstanding the ongoing Iowa ROFR statute litigation.  Consumer Alliance maintains that ITC Midwest has failed to demonstrate that the authorization of the Abandoned Plant Incentive is needed or appropriate prior to the end of that litigation and that the Commission should therefore defer to Iowa's judicial process.[66]  Consumer Alliance notes that ITC Midwest

---

[63] *Id.* at 13.

[64] *Id.* at 15.

[65] Consumer Alliance Answer at 3.

[66] *Id.* at 3-4.

could come back to the Commission and seek the incentive if and when it has clear legal authority to own and develop the Project.[67]

39.     Consumer Alliance argues that, contrary to ITC Midwest's claims, the underlying Iowa ROFR statute litigation does not entail expected landowner resistance, environmental, or permitting risks or matters entirely "beyond the control of the utility."[68] Consumer Alliance contends that, rather, the underlying Iowa ROFR statute litigation can be traced to efforts by ITC Midwest to promote the Iowa ROFR statute to receive a preferential treatment for the Project arising out of MISO's LRTP to avoid the application of Order No. 1000's transmission competition policies.[69]  According to Consumer Alliance, neither Commission policy nor precedent indicates an intent under Order No. 679 or section 219 to relieve transmission developers from litigation risks they helped create or exacerbate, or to impose the costs of voluntary assumption of such risks on consumers.  Consumer Alliance asserts that, if ITC Midwest wishes to proceed with the development of the Project, it should do so at its own risk and not be authorized by the Commission to pass any abandonment costs on to consumers.[70]

40.     Consumer Alliance contends that ITC Midwest does not demonstrate any authority under Order No. 679 or any Commission precedent to prematurely request the Abandoned Plant Incentive for a substantial scope of work for the Project that has yet to be clearly defined or assigned.  Consumer Alliance argues that ITC Midwest's request does not delineate any specific facts, challenges, and risks or a detailed explanation regarding the Mississippi River crossing portion of the Project.  Consumer Alliance's asserts that the Commission does not have enough information on which to review ITC Midwest's request to determine if ITC Midwest's request complies with Order No. 679's

---

[67] *Id.* at 9.

[68] *Id.* at 4 (citing Order No. 679, 116 FERC ¶ 61,057 at PP 165-166).

[69] *Id.* at 4-5 (citing *Transmission Plan. & Cost Allocation by Transmission Owning & Operating Pub. Utils.*, Order No. 1000, 136 FERC ¶ 61,051, at PP 332, 335 (2011), *order on reh'g*, Order No. 1000-A, 139 FERC ¶ 61,132, *order on reh'g & clarification*, Order No. 1000-B, 141 FERC ¶ 61,044 (2012), *aff'd sub nom. S.C. Pub. Serv. Auth.* v. *FERC*, 762 F.3d 41 (D.C. Cir. 2014)).

[70] *Id.* at 5.

requirements that the incentives requested are "tailored to address the demonstrable risks or challenges faced by the applicant in undertaking the project."[71]

41.     Moreover, Consumer Alliance argues that ITC Midwest has not met its burden to demonstrate that the requested Abandoned Plant Incentive is tailored to meet the risks and challenges of the Project and will produce just and reasonable rates.  Consumer Alliance contends that ITC Midwest only generically refers to MISO's transmission expansion plan process and generically applicable risks, Commission policy, and other incentive requests to support its request.[72]

42.     Consumer Alliance notes that neither Order No. 679 nor section 219 mandates that all eligible projects automatically receive the incentives requested.  Consumer Alliance argues that ITC Midwest overlooks the Commission's emphasis in the Transmission Incentives Policy Statement that the objective of section 219 is to encourage transmission infrastructure investment "while maintaining just and reasonable rates."[73]  Consumer Alliance further argues that the abandoned plant incentive is a "risk mitigation" incentive, and the Commission made it clear in the Transmission Incentives Policy Statement that it "expects applicants to take all reasonable steps to mitigate the risks of a project."[74]  Consumer Alliance asserts that, here, not only has ITC Midwest failed to mitigate the risks it seeks to protect against, it has voluntarily and proactively assumed those risks; therefore, the Commission need only find that ITC Midwest's request is premature and that ITC Midwest has not "take[n] all reasonable steps to mitigate the risks of a project."[75]

### e.     **Commission Determination**

43.     We grant ITC Midwest's request for the Abandoned Plant Incentive.  In Order No. 679, the Commission found that this incentive is an effective means of encouraging transmission development by reducing the risk of non-recovery of costs in the event that

---

[71] *Id.* at 5-6 (citing Order No. 679-A, 117 FERC ¶ 61,345 at PP 6, 21).

[72] *Id.* at 6-7.

[73] *Id.* at 7 (citing Transmission Incentives Policy Statement, 141 FERC ¶ 61,129 at P 1).

[74] *Id.* at 8 (citing Transmission Incentives Policy Statement, 141 FERC ¶ 61,129 at P 4).

[75] *Id.* at 8-9 (citing Transmission Incentives Policy Statement, 141 FERC ¶ 61,129 at P 4).

a project is abandoned for reasons outside of the applicant's control.[76]  We find that ITC Midwest has demonstrated that the Project faces certain regulatory, environmental, and siting risks that are beyond ITC Midwest's control and could lead to the Project's abandonment, and that approval of the Abandoned Plant Incentive will address those risks by protecting ITC Midwest if the Project is cancelled for reasons outside its control.  Thus, we find that ITC Midwest has demonstrated a nexus between its requested incentive and its planned investment, and that ITC Midwest has tailored its incentive rate request to its identification of risks and challenges associated with the Project.

44.     Consumer Alliance contends that ITC Midwest's request for the Abandoned Plant Incentive should be denied based on the questionable legality of Iowa's ROFR statute, and that ITC Midwest has not demonstrated that its ability to proceed is free and clear of any legal impediments arising from the pending ROFR litigation.  We disagree that ITC Midwest's request should be denied based on the pendency of litigation challenging Iowa's ROFR statute.  The presence of regulatory or litigation uncertainty does not preclude the Commission from evaluating or granting a request for transmission incentives under Order No. 679 or Commission precedent.[77]

45.     With respect to Consumer Alliance's argument that the Commission "presumes that all expenditures are prudent, so the utility need not justify in its case-in-chief the prudence of all of its costs," and that the Commission should reconsider its procedures and criteria for awarding the abandoned plant incentive, we find that these arguments are premature and outside of the scope of this proceeding.[78]  We note, however, that our granting ITC Midwest's request for the Abandoned Plant Incentive is not a determination that any costs that ITC Midwest actually incurs during the abeyance period or afterwards are prudent.[79]  The Commission will address the prudence of any costs incurred if and

---

[76] Order No. 679, 116 FERC ¶ 61,057 at PP 163-166; *see also, e.g.*, *ALLETE*, 153 FERC ¶ 61,296 at P 28; *TransCanyon*, 152 FERC ¶ 61,017 at P 41.

[77] *See* Order No. 679, 116 FERC ¶ 61,057 at PP 163-165; *see also NextEra Energy Transmission Southwest, LLC*, 180 FERC ¶ 61,032, at PP 8, 18-19 (2022); *Pioneer Transmission, LLC*, 126 FERC ¶ 61,281, at P 49 (2009), *order on reh'g & clarification*, 130 FERC ¶ 61,044, at P 58 (2010).

[78] Consumer Alliance Protest at 22-23 (quoting *Potomac-Appalachian Transmission Highline, LLC*, 158 FERC ¶ 61,050, at P 100 (2017) (*PATH*)).

[79] *PATH*, 158 FERC ¶ 61,050 at P 100 ("The Commission permits challenges to the prudence of individual expenditures when the Commission's filing requirements, policy, or precedent require otherwise, the Commission itself determines that the company must establish the prudence of an expenditure, or a party creates serious doubt as to the prudence of an expenditure.").

when ITC Midwest makes a filing under section 205 seeking recovery of such costs, and Consumer Alliance (and any other interested person) is free to challenge the prudence of such costs at that time.[80]

46.     We disagree with Consumer Alliance's contention that ITC Midwest's request fails to recognize the specific risks other projects faced in recent Commission-approved abandoned plant incentive requests.  The Commission stated in Order No. 679 that it will evaluate each request for incentives pursuant to that final rule on the merits of the individual application, on a case-by-case basis.[81]  In addition, we disagree with Consumer Alliance's argument that ITC Midwest has not explained how the Project's risks and challenges differ from those of a routine project.  In the Transmission Incentives Policy Statement, the Commission explained that it would no longer apply the Order No. 679 nexus analysis based on whether a proposed project is routine or non-routine.[82] Furthermore, we find that Consumer Alliance's argument that, if the Project were subject to MISO's Competitive Transmission Process, the Selected Developer would likely commit to higher levels of cost containment and a cost cap is outside of the scope of this proceeding.[83]

47.     Regarding Consumer Alliance's argument that ITC Midwest has not taken all reasonable steps to mitigate risks, the Commission explained in the Transmission Incentives Policy Statement that it "expects an applicant that requests an *incentive ROE* based on a project's risks and challenges to demonstrate that it is taking appropriate steps and using appropriate mechanisms to minimize its risks during project development."[84] Further, the Commission specifically pointed to the risk-reducing incentives, such as the abandoned plant incentive, as one such appropriate step that could be used by an applicant to mitigate risks.[85]

---

[80] We also note ITC Midwest's commitment not to seek recovery for any costs associated with the Mississippi River crossing if the Selected Developer – and not ITC Midwest – is determined to be responsible for that portion of the Project.

[81] *See* Order No. 679, 116 FERC ¶ 61,057 at P 43.

[82] Transmission Incentives Policy Statement, 141 FERC ¶ 61,129 at P 10.

[83] Consumer Alliance Protest at 18-19.

[84] Transmission Incentives Policy Statement, 141 FERC ¶ 61,129 at P 24 (emphasis added).

[85] *Id.* PP 4, 24.

Docket No. ER23-2033-000                                                    - 19 -

48.    The Abandoned Plant Incentive for the Project will be available to ITC Midwest for 100% of prudently-incurred costs expended on and after the date of this order, if the Project were to be abandoned for reasons beyond ITC Midwest's control.[86] As discussed above, we will not determine the prudence of any costs incurred prior to the abandonment, if any, until ITC Midwest seeks such recovery in a future section 205 filing.[87]

The Commission orders:

    ITC Midwest's request for the Abandoned Plant Incentive for the Project is hereby granted, as discussed in the body of this order.

By the Commission.  Commissioner Christie is dissenting with a separate statement
                                    attached.

( S E A L )




                                    Debbie-Anne A. Reese,
                                    Deputy Secretary.

---

[86] Order No. 679, 116 FERC ¶ 61,057 at P 163; *see San Diego Gas & Elec. Co. v. FERC*, 913 F.3d 127, at 137-38 (D.C. Cir. 2019) (*SDG&E*); *see also, e.g., NextEra Energy Transmission Midwest, LLC*, 166 FERC ¶ 61,169, at P 21 (2019); *GridLiance W. Transco LLC*, 164 FERC ¶ 61,049, at P 20 (2018); *Pac. Gas & Elec. Co.*, 163 FERC ¶ 61,187 at P 14; *Midcontinent Indep. Sys. Operator, Inc.*, 182 FERC ¶ 61,039, at P 28 (2023).

[87] Order No. 679, 116 FERC ¶ 61,057 at PP 165-166.  In the event that ITC Midwest seeks abandoned plant recovery for the time period prior to the effective date of this order, ITC Midwest would be eligible to seek recovery of 50% of its prudently-incurred costs, consistent with prior precedent.  *See, e.g., San Diego Gas & Elec. Co.*, 154 FERC ¶ 61,158, *order on reh'g*, 157 FERC ¶ 61,056 (2016), *aff'd, SDG&E*, 913 F.3d 127.

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

ITC Midwest, LLC                                Docket No.  ER23-2033-000

(Issued August 8, 2023)

CHRISTIE, Commissioner, *dissenting*:

1.      I dissent because I see no compelling reason to grant ITC Midwest the Abandoned Plant Incentive right now.  There currently is pending in the Iowa state courts a challenge to Iowa's Right of First Refusal (ROFR) law – the same law under which MISO assigned the Project to ITC Midwest.[1]  Should the Iowa ROFR law ultimately be struck down by the Iowa courts, presumably the bidding for the Project would have to be rerun by MISO on a competitive basis and only then would the award of the Project be certain.  In the alternative, should the Iowa ROFR law be upheld, the Commission could grant the incentive at that time.[2]

        For these reasons, I respectfully dissent.

_____

Mark C. Christie
Commissioner

_____

[1] Indeed, the Iowa Supreme Court has enjoined enforcement of the Iowa ROFR law pending the resolution of the state court litigation, concluding that the plaintiff challenging the Iowa ROFR law "has shown a likelihood of success on the merits of its claim that the ROFR's enactment violates . . . the Iowa Constitution."  Consumer Alliance Protest, Ex. B at 35; *see also id.* at 4, 30.

[2] While the Commission should always seek to act expeditiously, I note too that there is no statutory deadline to act on ITC Midwest's filing by a particular date. Moreover, while the majority suggests that nothing "preclude[s]" the Commission from granting the incentive and issuing this order, nothing requires it either.  *ITC Midwest, LLC*, 184 FERC ¶ 61,083, at P 44 (2023).

Document Content(s)

ER23-2033-000.docx.......................................................1

**EXHIBIT B**

185 FERC ¶ 62,013
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

ITC Midwest, LLC                                    Docket No. ER23-2033-001

NOTICE OF DENIAL OF REHEARING BY OPERATION OF LAW AND
PROVIDING FOR FURTHER CONSIDERATION

(October 10, 2023)

Rehearing has been timely requested of the Commission's order issued on
August 8, 2023, in this proceeding.  *ITC Midwest, LLC*, 184 FERC ¶ 61,083 (2023).  In
the absence of Commission action on a request for rehearing within 30 days from the date
it is filed, the request for rehearing may be deemed to have been denied.  16 U.S.C.
§ 825*l*(a); 18 C.F.R. § 385.713 (2022); *Allegheny Def. Project v. FERC*, 964 F.3d 1
(D.C. Cir. 2020) (en banc).

As provided in 16 U.S.C. § 825*l*(a), the request for rehearing of the above-cited
order filed in this proceeding will be addressed in a future order to be issued consistent
with the requirements of such section.  As also provided in 16 U.S.C. § 825*l*(a), the
Commission may modify or set aside its above-cited order, in whole or in part, in such
manner as it shall deem proper.

Kimberly D. Bose,
Secretary.

Document Content(s)

ER23-2033-001.docx.....................................................1

# EXHIBIT C

185 FERC ¶ 61,123
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Willie L. Phillips, Acting Chairman;
                        James P. Danly, Allison Clements,
                        and Mark C. Christie.

ITC Midwest, LLC                              Docket No.  ER23-2033-001

ORDER ADDRESSING ARGUMENTS RAISED ON REHEARING

(Issued November 16, 2023)

1.      On August 8, 2023, the Commission issued an order[1] authorizing ITC Midwest,
LLC (ITC Midwest) to recover, pursuant to Order No. 679,[2] 100% of prudently incurred
costs associated with its investment in the Skunk River-Ipava 345 kV Long Range
Transmission Plan project (Project) if the Project is cancelled or abandoned for reasons
beyond ITC Midwest's control (Abandoned Plant Incentive).  On September 7, 2023,
Industrial Energy Consumers of America, the Coalition of MISO Transmission
Customers, the Resale Power Group of Iowa, and the Wisconsin Industrial Energy Group
(collectively, Consumer Alliance) filed a request for rehearing and alternative request for
clarification of the Incentives Order.

2.      Pursuant to *Allegheny Defense Project v. FERC*,[3] the rehearing request filed in this
proceeding may be deemed denied by operation of law.  However, as permitted by
section 313(a) of the Federal Power Act (FPA),[4] we are modifying the discussion in the

---

[1] *ITC Midwest, LLC*, 184 FERC ¶ 61,083 (2023) (Incentives Order).

[2] *Promoting Transmission Inv. through Pricing Reform*, Order No. 679,
116 FERC ¶ 61,057, *order on reh'g*, Order No. 679-A, 117 FERC ¶ 61,345 (2006), *order
on reh'g*, 119 FERC ¶ 61,062 (2007).  *See also Promoting Transmission Inv. through
Pricing Reform,* 141 FERC ¶ 61,129 (2012) (Transmission Incentives Policy Statement).

[3] 964 F.3d 1 (D.C. Cir. 2020) (en banc).

[4] 16 U.S.C. § 825*l*(a) ("Until the record in a proceeding shall have been filed in a
court of appeals, as provided in subsection (b), the Commission may at any time, upon
reasonable notice and in such manner as it shall deem proper, modify or set aside, in
whole or in part, any finding or order made or issued by it under the provisions of this
chapter.").

Document Accession #: 20231116-3050     Filed Date: 11/16/2023
USCA Case #23-1334     Document #2029792     Filed: 12/04/2023     Page 37 of 57

Docket No. ER23-2033-001                                    - 2 -

Incentives Order, while continuing to reach the same result in this proceeding, as discussed below.[5]

## I. Background

### A. Assignment of the Iowa Portion of the Project to ITC Midwest

3.    ITC Midwest is an independent transmission company operating primarily in Iowa, with portions of its transmission system in Minnesota, Illinois, and Missouri. ITC Midwest is a transmission-owning member of the Midcontinent Independent System Operator, Inc. (MISO).[6]

4.    In July 2022, the MISO Board of Directors approved a portfolio of 18 transmission projects as part of the Long-Range Transmission Plan (LRTP) Tranche 1 Portfolio (LRTP Tranche 1 Portfolio), including the Project.[7] The Project consists of approximately 125 miles of new 345 kV line, to be constructed between the Skunk River Substation in Henry County, Iowa and the Ipava Substation in Fulton County, Illinois.[8]

5.    Under the Iowa right of first refusal statute (Iowa ROFR Statute), incumbent electric transmission owners in Iowa have a preferential "right to construct, own, and maintain an electric transmission line that has been approved for construction in a federally registered planning authority transmission plan and which connects to an electric transmission facility owned by the incumbent electric transmission owner."[9]

6.    Pursuant to the MISO Open Access Transmission, Energy and Operating Reserve Markets Tariff (Tariff) and the Iowa ROFR Statute, MISO assigned the Iowa portion of

---

[5] *Allegheny Def. Project*, 964 F.3d at 16-17. The Commission is not changing the outcome of the Incentives Order. *See Smith Lake Improvement & Stakeholders Ass'n v. FERC*, 809 F.3d 55, 56-57 (D.C. Cir. 2015).

[6] Transmittal at 2-3.

[7] *Id.* at 1 (citing Ex. 1, attach. A. *MTEP21 Report Addendum: MISO Long Range Transmission Planning Tranche 1 Executive Summary*, at 1 (Apr. 13, 2022), https://cdn.misoenergy.org/MTEP21%20AddendumLRTP%20Tranche%201%20Report%20with%20Executive%20Summary625790.pdf.).

[8] *Id.*

[9] Iowa Code § 478.16 (2022).

the Project to ITC Midwest, the incumbent transmission owner.[10]  The Illinois portion of
the Project will be constructed by a third party selected through the MISO Competitive
Developer Selection Process (Selected Developer).  ITC Midwest has indicated that it
will work with the Selected Developer to determine cost and construction responsibility
for the Mississippi River crossing that will link the Iowa and Illinois portions of the
Project.[11]

7.      On March 24, 2023, the Iowa Supreme Court granted a temporary injunction
staying the enforcement of the Iowa ROFR Statute, pending ongoing litigation regarding
its constitutionality under state law.  The Iowa Supreme Court remanded to the district
court to decide the constitutionality question on the merits.[12]

## B.      Abandoned Plant Incentive

8.      Section 219 of the FPA directs the Commission to establish incentive-based rate
treatments for certain interstate electric transmission projects.[13]

9.      In Order No. 679, the Commission, acting pursuant to section 219, established
criteria for various incentive-based rate treatments, including, as relevant here, an
Abandoned Plant Incentive, which allows for recovery of 100% of the prudently incurred
costs associated with abandoned transmission projects if such abandonment is outside the
control of the public utility.[14]  In order to receive an Abandoned Plant Incentive, the
applicant must demonstrate that:  (1) "the facilities for which it seeks incentives either
ensure reliability or reduce the cost of delivered power by reducing transmission
congestion," (2) the total package of incentives requested is "tailored to address the
demonstrable risks or challenges faced by the applicant," and (3) the resulting rates are
just and reasonable.[15]

---

[10] Consumer Alliance Protest, Ex. A; MISO, Tariff, attach. FF, (Transmission
Expansion Planning Protocol) (90.0.0), § VIII.A.1.

[11] Transmittal at 2.

[12] *LS Power Midcontinent, LLC v. State of Iowa*, 988 N.W.2d 316, 340 (2023).  In
granting the temporary injunction, the Iowa Supreme Court found that the constitutional
challenges to the Iowa ROFR Statute were likely to succeed on the merits.  *Id.* at 338.

[13] 16 U.S.C. § 824s.

[14] Order No. 679, 116 FERC ¶ 61,057 at P 163.

[15] *Id.* P 76; Order No. 679-A, 117 FERC ¶ 61,345 at P 27.

10.    On May 30, 2023, ITC Midwest submitted a request under section 205 of the FPA,[16] Order No. 679, and the Commission's Transmission Incentives Policy Statement for an Abandoned Plant Incentive for the Project.  Consumer Alliance protested the filing.  On August 8, 2023, the Commission granted ITC Midwest's request.  As relevant on rehearing, the Commission found that ITC Midwest had demonstrated that the Project faces certain regulatory, environmental, and siting risks that could lead to the Project's abandonment, and that approval of the Abandoned Plant Incentive will address those risks by protecting ITC Midwest if the Project is cancelled for reasons outside its control.[17]  The Commission stated that the Abandoned Plant Incentive for the Project would be available to ITC Midwest for 100% of the prudently incurred costs expended on and after the date of the Incentives Order, *i.e.,* August 8, 2023.[18]  The Commission further stated that it would not determine the prudence of any costs incurred prior to the abandonment, if any, until ITC Midwest seeks such recovery in a future section 205 filing.[19]

11.    On rehearing, Consumer Alliance requests that the Commission grant rehearing of the Incentives Order and reject ITC Midwest's request for the Abandoned Plant Incentive.  Consumer Alliance alleges that the Commission erred by failing to support the Commission's finding of a nexus between the requested incentive and the risks associated with the Project and by failing to consider the impact of state constitutional challenges to the Iowa ROFR Statute.  Consumer Alliance alternatively requests that the Commission clarify that, in any future section 205 proceeding in which ITC Midwest seeks recovery of costs that it claims were prudently incurred as a result of developing and constructing the Project, the Iowa ROFR Statute's unconstitutionality and reassignment of the Project pursuant to MISO's Competitive Transmission Process cannot constitute circumstances "beyond the control of management" for recovering development and construction costs pursuant to the Abandoned Plant Incentive.[20]  On September 19, 2023, ITC Midwest submitted a limited answer addressing only Consumer Alliance's alternative request for clarification.

---

[16] 16 U.S.C. § 824d.

[17] Incentives Order, 184 FERC ¶ 61,083 at P 43.

[18] *Id.* P 48.

[19] *Id.* (citing Order No. 679, 116 FERC ¶ 61,057 at PP 165-166).

[20] Rehearing Request at 28.

Docket No. ER23-2033-001                                                             - 5 -

## II.    <u>Discussion</u>

12.    We sustain the result of the Incentives Order.  We continue to find that a fact-specific analysis of this record supports the Commission's finding that ITC Midwest's total package of incentives, including the Abandoned Plant Incentive awarded in the Incentives Order, is tailored to the risks and challenges associated with the Project, as required under the nexus test.  In addition, we continue to find that the Iowa ROFR Statute litigation does not preclude the Commission from evaluating or granting the Abandoned Plant Incentive, nor was it premature to grant the Abandoned Plant Incentive at this juncture.

### A.    <u>Nexus Test</u>

#### 1.    <u>Consumer Alliance's Rehearing Request</u>

13.    Consumer Alliance argues that ITC Midwest did not sustain its evidentiary burden to demonstrate that its Abandoned Plant Incentive is narrowly tailored to the specific risks and challenges under Order No. 679's nexus test.[21]  Consumer Alliance alleges that the Commission failed to explain the specific regulatory, environmental, and siting risks faced by the project and instead relied on ITC Midwest's generic assertions about transmission project risks that would be applicable to any large transmission project.[22]

14.    Consumer Alliance alleges that the Commission did not respond to the argument that ITC Midwest's application was premature insofar as the scope of the work for the Project had not yet been finalized and that the extent of the associated risks and challenges could not yet be articulated.  In particular, Consumer Alliance states that ITC Midwest does not yet have any certainty regarding the degree to which it will be responsible for the segment of the Project crossing the Mississippi River.[23]

15.    Consumer Alliance maintains that ITC Midwest failed to satisfy the nexus test because it did not provide a detailed description of the special risks and challenges faced by the Project, nor did it explain how those risks and challenges compare to a project that is more routine in nature.[24]  Specifically, Consumer Alliance argues that the Iowa portion of the Project is not a greenfield transmission line and that portions of the new facilities

---

[21] Rehearing Request at 21-22.

[22] *Id.* at 23.

[23] *Id.* at 24.

[24] *Id.* at 25-26.

will be built within existing easements, which obviates the risk of securing new easements and lowers the risk of permit denial.[25]

16.    Finally, Consumer Alliance argues that ITC Midwest failed to connect any of the specific risks and challenges of the Project to the type of incentive requested. Referencing ITC Midwest's argument that the Project faces cash flow risks associated with long lead time facilities being placed into rate base, Consumer Alliance argues that the Abandoned Plant Incentive does nothing to mitigate this risk and notes that ITC Midwest has not requested a Construction Work in Progress incentive.[26]

## 2.    **Commission Determination**

17.    We continue to find that ITC Midwest has demonstrated a nexus between its requested incentive and its planned investment, and that the total package of ITC Midwest's incentives is tailored to its identification of risks and challenges associated with the Project.[27]  Our analysis under the nexus test is specific to the instant facts and is therefore consistent with the Commission's commitment to "evaluate proposals on a case-by-case basis."[28]

18.    ITC Midwest submitted expert testimony to demonstrate that the Project will require numerous federal, state, and regulatory approvals, with the risks that any of these approvals will be denied or, alternatively, challenged in court.[29]  ITC Midwest specifically noted an increase in opposition to large infrastructure projects from landowners and other stakeholders, and that it anticipates court challenges to awards of permits and other approvals.[30]  ITC Midwest also noted a risk that any one agency may place conditions or restrictions on the Project that could result in its delay or

---

[25] *Id.* at 26.

[26] *Id.* at 27.

[27] Incentives Order, 184 FERC ¶ 61,083 at P 43.

[28] Order No. 679, 116 FERC ¶ 61,057 at P 164.

[29] ITC Midwest Filing, Ex. 1 (Prepared Direct Testimony of Jeffrey W. Eddy), at 8:1–9:3.

[30] *Id.* at 9:23–10:1.

Document Accession #: 20231116-3050          Filed Date: 11/16/2023

abandonment.[31]  These are among the risks discussed in the Transmission Incentives Policy Statement as warranting certain incentives.[32]

19.     ITC Midwest's fact-specific demonstrations described above and in the Incentives Order support our finding that ITC Midwest's request for the Abandoned Plant Incentive is appropriately tailored to meet the Project's risks and challenges.  We note as well that the objective of the nexus test "is to ensure that incentives are not provided in circumstances where they do not materially affect investment decisions."[33]  We find that the Abandoned Plant Incentive is rationally related to the investment proposed and would materially affect investment decisions in the Project.

20.     Further, although Consumer Alliance claims that ITC Midwest benefits from its existing Regional Transmission Organization (RTO) and Transco[34] adders to its return on equity (ROE),[35] those adders are not awarded based on the risks and challenges of this Project[36] and do not allow ITC Midwest the opportunity to recover 100% of its prudently incurred costs in the event of abandonment for reasons beyond ITC Midwest's control.  Therefore, consistent with the Commission's decision in Order No. 679-A, we find that ITC Midwest has demonstrated that the total package of its incentives is tailored to address the demonstrable risks or challenges faced with respect to the Project.[37]

---

[31] *Id.* at 10:1–3.

[32] Transmission Incentives Policy Statement, 141 FERC ¶ 61,129 at P 14.

[33] Order No. 679-A, 117 FERC ¶ 61,345 at P 25.

[34] A Transco is a stand-alone transmission company that has been approved by the Commission and that sells transmission services at wholesale and/or on an unbundled retail basis, regardless of whether it is affiliated with another public utility.  *See* Order No. 679, 116 FERC ¶ 61,057 at P 201.

[35] Rehearing Request at 27 n.83 (citing ITC Midwest's 50-basis point RTO adder and a 25-basis point Transco adder to its ROE).

[36] *See* Transmission Incentives Policy Statement, 141 FERC ¶ 61,129 at P 5 (characterizing incentive ROEs for RTO membership and Transco formation as "not based on the risks and challenges of a project"); *see also Midcontinent Indep. Sys. Operator, Inc.*, 150 FERC ¶ 61,004, at P 44 (2015) (approving 50-basis point RTO adder); *Consumers Energy Co. v. Int'l Transmission Co.*, 165 FERC ¶ 61,021, at P 74 (2018) (reducing ITC Midwest Transco adder to 25-basis points).

[37] *See* Order No. 679-A, 117 FERC ¶ 61,345 at P 27.

21.     We are unpersuaded by Consumer Alliance's argument that ITC Midwest failed to connect the specific risks and challenges to the type of incentive requested. We disagree with Consumer Alliance's argument that "ITC Midwest sought an [Abandoned Plant Incentive] that does nothing to mitigate cash flow risk."[38] As the Commission observed in the Transmission Incentives Policy Statement, "recovery of 100 percent of prudently incurred costs of transmission facilities that are abandoned for reasons beyond the applicant's control… reduce[s] the *financial* and regulatory risks associated with transmission investment."[39] Here, we find that the regulatory and environmental risks that ITC Midwest raised in its Abandoned Plant Incentive request can result in significant financial risks, which could include cash flow risks that can negatively impact cash flows and financial stability, risks that are addressed under the Abandoned Plant Incentive in Order No. 679 and the Transmission Incentives Policy Statement.

22.     We are similarly not persuaded by Consumer Alliance's argument that the Abandoned Plant Incentive is not warranted due to the Project's potential use of existing easements and rights of way. Consumer Alliance appears to invoke these existing easements to suggest that the Project does not face special risks or challenges and that the Project is more routine in nature.[40] As noted in the Incentives Order, the Commission no longer relies on the routine/non-routine analysis adopted in *BG&E* as a proxy for the nexus test, but instead considers whether the total package of requested incentives is tailored to address demonstrable risks and challenges.[41] Such is the case here, and we disagree that the Project's potential use of existing easements disqualifies ITC Midwest from receiving its requested Abandoned Plant Incentive. Indeed, as ITC Midwest notes, the Commission has previously granted the Abandoned Plant Incentive to developers in the LRTP Tranche 1 Portfolio intending to largely rely on existing easements and rights of way.[42]

---

[38] Rehearing Request at 27.

[39] Transmission Incentives Policy Statement, 141 FERC ¶ 61,129 at P 11 (emphasis added); *see also* Order No. 679, 116 FERC ¶ 61,057 at P 163.

[40] Rehearing Request at 25 (citing *Balt. Gas & Elec. Co.*, 120 FERC ¶ 61,084, at P 53 (2007) (*BG&E*) and arguing that ITC Midwest "failed to demonstrate sufficient . . . siting risks and challenges given that . . . portions of new facilities will be built within existing easements . . . ").

[41] Incentives Order, 184 FERC ¶ 61,083 at P 46; Transmission Incentives Policy Statement, 141 FERC ¶ 61,129 at P 10.

[42] *See Midcontinent Indep. Sys. Operator, Inc.*, 182 FERC ¶ 61,039, at PP 7, 27 (2023); ITC Midwest Answer at 13.

23.    Lastly, we do not agree with Consumer Alliance that the Abandoned Plant Incentive is premature in light of ITC Midwest's uncertainty over responsibility for the Mississippi River crossing portion of the Project.  ITC Midwest has committed to not seek recovery for any costs associated with the Mississippi River crossing, if ITC Midwest does not become the Selected Developer for that portion of the Project.[43] Moreover, we find that, even if ITC Midwest is not assigned responsibility for the Mississippi River crossing portion of the Project, the remainder of the Project presents sufficient risks and challenges to support granting the Abandoned Plant Incentive under the nexus test.

## B.    Consideration of the Iowa ROFR Statute Litigation

### 1.    Consumer Alliance's Rehearing Request

24.    Consumer Alliance alleges that the Commission failed to give proper weight to the Iowa Supreme Court's decision enjoining enforcement of the Iowa ROFR Statute.[44] Consumer Alliance argues that ITC Midwest's right to develop the Project rests solely on the Iowa ROFR Statute, which could be deemed void *ab initio* in the ongoing Iowa Supreme Court litigation, noting the Court's determination that the constitutional challenges to the Iowa ROFR Statute were likely to succeed on the merits.[45]

25.    Consumer Alliance argues that, unlike standard cases in which an incumbent public utility seeks an Abandoned Plant Incentive, this case arises before ITC Midwest's right to develop the Iowa Project has been secured.  Consumer Alliance states that, in a typical Abandoned Plant Incentive cost recovery case, ITC Midwest would bear the burden of showing that:  (1) the Project was abandoned for reasons beyond its control; and (2) its expenses were prudent at the time they were incurred.  Consumer Alliance states that, in this case, with respect to the first showing, no abandonment would have occurred because the Project would have been awarded to a Competitive Transmission Developer and would be moving forward.[46]  As to the second showing of prudence, Consumer Alliance argues that the Commission could reasonably find that any post-Incentive Order development and construction expenses were imprudent *per se* because they would have been incurred after the Iowa Supreme Court enjoined the ROFR statue's effectiveness, which would expose ITC Midwest to the very risk of non-recovery of costs

---

[43] Incentives Order, 184 FERC ¶ 61,083 at P 45 n.80.

[44] Rehearing Request at 10.

[45] *Id.* at 10-11 (citing *LS Power*, 988 N.W.2d at 338).

[46] *Id.* at 12.

that the Abandoned Plant Incentive was intended to mitigate.[47]  Alternatively, Consumer
Alliance states that, if the Commission subsequently determines that ITC Midwest
incurred post-Incentive Order costs prudently, customers would be left paying rates based
on abandoned plant costs while also paying rates based on the actual development and
construction costs for the same project that proceeds with a different developer.
Consumer Alliance argues that, in Order No. 679, the Commission emphasized the
importance of avoiding double recovery from consumers.  Consumer Alliance argues that
this partially duplicative cost recovery would raise the overall cost of the Project and
would diminish, if not erase, the overall value of the competitive process.[48]

26.     Consumer Alliance alleges that the Commission's consideration of the Abandoned
Plant Incentive "has devolved from a careful case-by-case analysis of facts into the rote
application of Order No. 679's standards."[49]  Consumer Alliance argues that ITC
Midwest's right to develop the Project rests solely on the now-stayed Iowa ROFR Statue,
which is subject to challenge in Iowa's courts and, as such, this case differs from the
standard cases in which an incumbent public utility seeks an Abandoned Plant Incentive.
Citing the temporary injunction and stay of the Iowa ROFR Statute, Consumer Alliance
argues that ITC Midwest's right to develop the project is "at best unsettled and most
likely void,"[50] and that the Commission should have viewed this application differently
than the standard Order No. 679 analysis in which an incumbent public utility with a
secured right to the project seeks an Abandoned Plant Incentive.  Consumer Alliance
argues that the "mis-fit" between the instant circumstances and the Order No. 679
framework will result in unjust and unreasonable rates no matter how the pending Iowa
ROFR Statute litigation is resolved.[51]

27.     Consumer Alliance argues that the Incentives Order forces customers to assume an
unjust and unreasonable level of risk if the Iowa courts ultimately find the Iowa ROFR
Statute unconstitutional.  Consumer Alliance contends that the Incentives Order gave ITC
Midwest the green light to incur costs without providing any cost-limiting parameters or

---

[47] *Id.*

[48] *Id.* at 12-13 & n.32 (citing Order No. 679, 116 FERC ¶ 61,057 at P 166 ("The
Commission will evaluate the public utility's cost recovery to ensure no double recovery
of costs"); *United Airlines, Inc. v. FERC*, 827 F.3d 122, 134 (D.C. Cir. 2016) (vacating
the Commission's order because the Commission failed to demonstrate that there was no
double-recovery of certain taxes)).

[49] *Id.* at 10.

[50] *Id.* at 11.

[51] *Id.*

conditions, aside from the broad standard of determining post hoc whether the costs were "prudently incurred," based on a comparison to expenditures made by other reasonable utility managers under similar conditions.[52]

28.     Consumer Alliance also argues that the Abandoned Plant Incentive in this case is a de facto insurance whereby customers are insuring not only against the utility's non-recovery of costs for an abandoned project, but also against the adverse financial consequences of losing the Iowa ROFR Statute litigation.[53]

29.     Consumer Alliance contends that the Commission failed to engage with and meaningfully address its arguments regarding the "considerable doubts" surrounding ITC Midwest's right to develop and construct the Project.[54]  Consumer Alliance disputes the Commission's conclusion that the presence of regulatory or litigation uncertainty does not preclude the Commission from granting a request for transmission incentives under Order No. 679.  Consumer Alliance argues that the cases the Commission cited for this proposition do not support granting the Abandoned Plant Incentive.  Consumer Alliance states that, in *NextEra Energy Transmission Southwest, LLC*,[55] there was no litigation challenging NextEra's right to own, develop, and construct the project and, instead, the regulatory risk involved the possibility that incumbent developers would lobby their state legislatures to block the project of the non-incumbent utility.[56]  Consumer Alliance asserts that here, in contrast, ITC Midwest's right to own, develop, and construct the Project has never been free from legal challenge.[57]  Consumer Alliance argues that the same distinction applies to *Pioneer Transmission, LLC*,[58] where the transmission provider's right to own, develop, or operate the project was not subject to challenge and where the only issue was whether the transmission provider had satisfied Order No. 679's nexus test.[59]

---

[52] *Id.*

[53] *Id.* at 14.

[54] *Id.* at 15.

[55] 180 FERC ¶ 61,032 (2022) (*NextEra*).

[56] Rehearing Request at 16.

[57] *Id.* at 16-17.

[58] 126 FERC ¶ 61,281 (2009) (*Pioneer*).

[59] Rehearing Request at 18.

30.     Consumer Alliance further alleges that the Incentives Order is arbitrary and capricious because it assumes that ITC Midwest will own, develop, and construct the Project, which is an assumption that the Iowa Supreme Court has already deemed unlikely.  Consumer Alliance argues that "the Commission must act only on what is, not what might be, and therefore urges the Commission to grant rehearing and dismiss this case until such time as the issue of ITC Midwest's right to own, develop, and construct the Iowa Project has been settled."[60]

31.     Consumer Alliance states that, under the United States Constitution's comity clause, courts and tribunals in one jurisdiction must respect the laws and judicial decisions of other jurisdictions out of deference and mutual respect.[61]  Consumer Alliance alleges that the Commission erred by prematurely authorizing the Abandoned Plant Incentive to ITC Midwest instead of deferring to the Iowa judicial process. Consumer Alliance states that "this is not a case in which the Commission's technical expertise requires deference by the appellate courts."[62]  Consumer Alliance argues that the Commission did not explain why it considered the Iowa ROFR Statue litigation to be irrelevant and that this determination was not based on any particular technical expertise within the Commission's jurisdiction.  Accordingly, Consumer Alliance requests that the Commission dismiss this proceeding without prejudice pending a final, non-appealable determination of the Iowa ROFR Statute's constitutionality by the Iowa courts.[63]

## 2.     Commission Determination

32.     We continue to find the Abandoned Plant Incentive appropriate here, notwithstanding the Iowa ROFR Statute litigation and the stay of the Iowa ROFR Statute.

33.     Both FPA section 219 and the Commission's implementing regulations and precedent demonstrate that granting incentives in the presence of legal or regulatory uncertainty is consistent with the policy behind the award of transmission incentives. Section 219 of the FPA directed the Commission to develop an incentive policy to "promot[e] capital investment in the enlargement, improvement, maintenance, and operation of all facilities for the transmission of electric energy in interstate commerce."[64]

---

[60] *Id.*

[61] *Id.* at 19 (citing U.S. Constitution, Article IV, § 2, Clause 2).

[62] *Id.* at 20 (citing *El Paso Elec. Co. v. FERC*, 832 F.3d 495, 503 (5th Cir. 2016)).

[63] *Id.*

[64] 16 U.S.C. § 824s(b)(2).  The Commission developed the Abandoned Plant Incentive pursuant to this statutory authority, and its assessment of the instant facts and circumstance in granting this incentive are within the purview of section 219 and thus

In implementing section 219 via Order No. 679, the Commission explained its intent to "reduce the risks of new investments," such as by providing "assurance of recovery of abandoned plant costs if the project is abandoned for reasons outside the control of the public utility."[65]

34.     We disagree with Consumer Alliance's argument that the Iowa ROFR Statute litigation warrants an alternative analysis or departure from Commission precedent. Consumer Alliance does not dispute that unless and until the Iowa ROFR Statute is ruled unconstitutional, the Project was properly assigned to ITC Midwest under MISO's Tariff. Nor does Consumer Alliance claim that any other public utility can exercise a right to develop the Project at this time.[66]  Thus, absent capital investment by ITC Midwest, the Project will not advance.  Providing ITC Midwest assurance that it will be able to recover 100% of its prudently incurred costs in the event the Project is cancelled or abandoned for reasons outside of its control encourages the development of the Project in furtherance of the policy objectives underlying section 219 and Order No. 679.[67]

---

entitled to deference.  Furthermore, the Commission's determination that the Project faces "regulatory, environmental, and siting risks beyond ITC Midwest's control and could lead to the Project's abandonment" reflects the Commission's technical expertise in both assessing risks and implementing incentives that may affect Commission-jurisdictional rates.  *See* Incentives Order, 184 FERC ¶ 61,083 at P 43; *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016) ("We afford great deference to the Commission in its rate decisions.") (quoting *Morgan Stanley Cap. Grp. Inc. v. Pub. Util. Dist. No. 1 of Snohomish Cty.*, 554 U.S. 527, 532 (2008)).

[65] Order No. 679, 116 FERC ¶ 61,057 at P 28; *see, e.g., Am. Transmission Co. LLC*, 166 FERC ¶ 61,025 (2019), at P 16; *Midcontinent Indep. Sys Operator Inc.*, 153 FERC ¶ 61,296, at P 28 (2015); *TransCanyon DCR, LLC,* 152 FERC ¶ 61,017, at P 41 (2015).

[66] Consumer Alliance does, however, argue that, "[i]f the Iowa courts find the ROFR statute to be unconstitutional under Iowa law, the [Project] would qualify as a Competitive Transmission Project under Tariff Attachment FF and MISO would award it based upon its evaluation of proposals submitted for Qualified Transmission Developers."  Rehearing Request at 11-12.

[67] *See* 16 U.S.C. 824s(b) (requiring rulemaking to "promot[e] capital investment in the enlargement, improvement, maintenance, and operations of all facilities for the transmission of electric energy in interstate commerce"); Order No. 679, 141 FERC ¶ 61,129 at P 163 (finding that the Abandoned Plant Incentive "will be an effective means to encourage transmission development by reducing the risk of non-recovery of costs").

35.     We are unpersuaded by Consumer Alliance's argument that the Commission acted prematurely in granting the Abandoned Plant Incentive.  While the Iowa Supreme Court did hold that the constitutional challenge to the Iowa ROFR Statute was likely to succeed on the merits, the Court remanded to the district court to make the merits decision on constitutionality in the first instance.[68]  The merits decision on the constitutionality of the Iowa ROFR Statute, the timing of the merits decision, the effect of any appeals, and the effect of all of the above on ITC Midwest's rights to own, develop, and construct the Project remain uncertain and are beyond ITC Midwest's control.  Accordingly, we sustain the Commission's determination to grant the Abandoned Plant Incentive, effective August 8, 2023.[69]

36.     Nevertheless, as noted in the Incentives Order, our determination to grant the Abandoned Plant Incentive is not a determination as to the prudence of any costs that ITC Midwest actually incurs between the effective date of the Abandoned Plant Incentive and the conclusion of the Iowa ROFR Statute litigation.[70]  The Commission will assess the prudence of ITC Midwest's expenditures, including any challenges thereto, if and when ITC Midwest makes a filing under section 205 seeking recovery of such costs associated with the Project.[71]  Consumer Alliance is therefore mistaken in asserting that "the [Incentives] Order determined that expending funds on the [Project's] development and construction prior to securing the final, non-appealable right to do so is prudent *per se.*"[72]

37.     Our determination to grant the Abandoned Plant Incentive in this case is consistent with Commission precedent, where the risk of ROFR litigation has not precluded the Commission from evaluating or granting a request for transmission rate incentives under Order No. 679.  For example, in *Republic*, the Commission granted Republic Transmission, LLC's (Republic) request for the Abandoned Plant Incentive, notwithstanding Republic's concern that incumbent transmission owners may bring

---

[68] *LS Power,* 988 N.W. 2d at 336, 340.

[69] Incentives Order, 184 FERC ¶ 61,083 at P 48.

[70] *Id.* P 45.

[71] We also note ITC Midwest's commitment not to seek recovery for any costs associated with the Mississippi River crossing if ITC Midwest does not become the Selected Developer for that portion of the Project.  ITC Midwest Answer at 16; Incentives Order, 184 FERC ¶ 61,083 at P 37.

[72] Rehearing Request at 13.

litigation under a recently passed ROFR statute.[73]  Consumer Alliance's attempt to distinguish other similar precedent cited in the Incentives Order is unavailing.  In *NextEra*, the Commission granted NextEra's request for an Abandoned Plant Incentive despite "the risk that incumbent utilities in Oklahoma will lobby their state legislature to pass state laws creating a right of first refusal or impose other limitations on the ability of non-incumbent utilities to obtain necessary permits or otherwise to develop or own transmission assets in the state."[74]  While we recognize that the distribution of rights between incumbents and non-incumbents are reversed in this case from those in *Republic* and *NextEra*, all applicants in these proceedings are faced with a risk that developments in state law could cast doubt on their respective rights to develop the project.  Therefore, we continue to find that such legal uncertainties are not incompatible with the Abandoned Plant Incentive.[75]  We are also unpersuaded by Consumer Alliance's speculative double recovery argument.  While it is possible that customers may pay rates based on the abandoned plant costs in addition to the actual development and construction costs for the Project of any subsequently selected developer, this hypothetical circumstance does not preclude the Commission from awarding the Abandoned Plant Incentive to ITC Midwest.  Contrary to Consumer Alliance's argument on rehearing, the Commission has never required that a developer provide absolute assurance that it will remain responsible for a project prior to awarding incentive rate treatment.  Moreover, Consumer Alliance is not alleging the potential for an unjust double recovery of the Project costs by one developer, as contemplated and foreclosed under Order No. 679.[76]

38.     Consumer Alliance's argument that comity counsels against the grant of the Abandoned Plant Incentive is also unpersuasive.  Under the comity clause in the United States Constitution, courts and tribunals in one jurisdiction must respect the laws and judicial decisions of other jurisdictions out of deference and mutual respect.[77]  The

---

[73] *Midcontinent Indep. Sys. Operator, Inc.*, 184 FERC ¶ 61,040, at PP 16, 20 (2023) (*Republic*).

[74] *NextEra*, 180 FERC ¶ 61,032 at P 8.

[75] Incentives Order, 184 FERC ¶ 61,083 at P 44 ("The presence of regulatory or litigation uncertainty does not preclude the Commission from evaluating or granting a request for transmission incentives under Order No. 679 or Commission precedent.").

[76] Order No. 679, 116 FERC ¶ 61,057 at P 166 (providing the example that, "if a utility already recovered survey costs by expensing these costs as a pre-commercial cost, it would be unjust and unreasonable for the utility to recover those costs again if the facility was subsequently abandoned").

[77] *See* U.S. Constitution, Article IV, § 2, Clause 2.

doctrine of comity typically applies in cases of overlapping jurisdiction.[78]  Here, there is no such jurisdictional overlap.  We are not making any ruling on the constitutionality of the Iowa ROFR Statute or any other issue properly before the Iowa courts.  Our ruling is limited to whether ITC Midwest qualifies for the Abandoned Plant Incentive, a matter within the exclusive jurisdiction of the Commission.  Further, the timing of the Commission's order granting the Abandoned Plant Incentive is within our discretion and the Incentives Order is therefore not premature.[79]

## C.  **Alternative Request for Clarification**

### 1.  **Consumer Alliance's Requested Clarification and ITC Midwest's Answer**

39.    In the alternative, if rehearing is denied, Consumer Alliance seeks clarification that, in any subsequent FPA section 205 filing in which ITC Midwest seeks to recover prudently incurred costs under the Abandoned Plant Incentive, the unconstitutionality of the Iowa ROFR Statute and reassignment of the Project (should those occur) cannot constitute circumstances "beyond the control" of ITC Midwest.[80]  Consumer Alliance argues that, given the current legal posture of the Iowa ROFR Statute litigation, ITC Midwest should make its own assessment of the litigation risk without relying on its customers as a backstop insurer of last resort.[81]

40.    ITC Midwest urges the Commission to deny Consumer Alliance's clarification request because it would require the Commission to prejudge the outcome of "an as-yet-theoretical" section 205 filing.[82]  ITC Midwest argues that it is contrary to reasoned

---

[78] *Pub. Utils. Comm'n of the State of Cal. v. FERC*, 143 F.3d 610, 618 (D.C. Cir. 1998) (finding no overlapping jurisdiction between the Commission and the California Public Utilities Commission under the facts of the case).

[79] *See Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 366 (D.C. Cir. 2003) ("Administrative agencies enjoy 'broad discretion' to manage their own dockets." (citing *Telecomm. Resellers Ass'n v. FCC*, 141 F.3d 1193, 1196 (D.C. Cir. 1998))); *Stowers Oil & Gas Co*., 27 FERC ¶ 61,001, at 61,001 (1984) ("The Commission ... is generally master of its own calendar and procedures." (citing *Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.,* 423 U.S. 326, 333-34 (1976); *Richmond Power & Light Co. v. FERC,* 574 F.2d 610, 624 (D.C. Cir. 1978))).

[80] Rehearing Request at 28.

[81] *Id.* at 28-29.

[82] ITC Midwest Answer at 1.

decision-making to issue a blanket denial for any theoretical future recovery of costs between the August 8, 2023 effective date granted in the Incentives Order and the resolution of the Iowa ROFR Statute litigation without having undertaken the prudence analysis required under Order No. 679 and section 205 of the FPA.[83]

### 2. Commission Determination

41.    We deny Consumer Alliance's request for clarification.  As explained above and in the Incentives Order, in the event of abandonment, any expenses that ITC Midwest seeks to recover pursuant to the Abandoned Plant Incentive will be the subject of a future section 205 filing, to which Consumer Alliance and others may raise prudence challenges.[84]  We will not prejudge the outcome of this future hypothetical section 205 proceeding.

The Commission orders:

In response to Consumer Alliance's request for rehearing, the Incentives Order is hereby modified and the result sustained, as discussed in the body of this order.

By the Commission.  Commissioner Christie is dissenting with a separate statement
                          attached.

( S E A L )

Kimberly D. Bose,
Secretary.

---

[83] *Id.* at 3.

[84] *See supra* P 35; Incentives Order, 184 FERC ¶ 61,083 at P 48; *see also Potomac-Appalachian Transmission Highline, LLC*, Opinion No. 554, 158 FERC ¶ 61,050, at P 99 (2017) ("A prudent expenditure is one 'reasonable utility management [] would have made, in good faith, under the same circumstances, and at the relevant point in time.'  A prudence determination is based upon what the company knew or should have known at the time a decision was made." (citations omitted)).

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

ITC Midwest, LLC                                          Docket No.  ER23-2033-001

(Issued November 16, 2023)

CHRISTIE, Commissioner, *dissenting*:

1.      I dissent to today's rehearing order.  For the reasons set forth in my dissent to the underlying Incentives Order,[1] I believe the Commission should set aside the Incentives Order and deny, without prejudice, ITC Midwest's request for the Abandoned Plant Incentive.

        For these reasons, I respectfully dissent.

_____

Mark C. Christie
Commissioner

_____

[1] *ITC Midwest, LLC*, 184 FERC ¶ 61,083 (2023) (Christie, Comm'r, dissenting), https://www.ferc.gov/news-events/news/commissioner-christies-dissent-itc-midwest-abandoned-plant-incentive-order-er23.

Document Accession #: 20231116-3050     Filed Date: 11/16/2023
Document Content(s)
ER23-2033-001.docx......................................................1

## CERTIFICATE OF SERVICE

I hereby certify that, on December 4, 2023, a copy of the foregoing Petition

for Review was served by e-mail upon each person designated on the official service

list maintained by the Secretary of the Federal Energy Regulatory Commission in

the proceeding below.  A file-stamped copy of the Petition for Review will be served

upon Respondent, pursuant to 18 C.F.R. § 385.2012 (1995), as follows:

Honorable Kimberly D. Bose, Secretary
Federal Energy Regulatory
Commission
888 First St., NE
Washington, DC 20426

Robert H. Solomon, Solicitor
Office of the Solicitor
Federal Energy Regulatory
Commission
888 First St., NE, Room 9A-01
Washington, DC 20426


*/s/ Kenneth R. Stark*
Kenneth R. Stark
McNees Wallace & Nurick LLC
100 Pine Street
Harrisburg, PA 17101
717-237-5378
kstark@mcneeslaw.com

**SERVICE LIST**

Andrew Cardon                    andrewcardon@alliantenergy.com
Managing Corporate Counsel
200 First Street SE
Cedar Rapids, IA 52401

Cy McNeill                       cymcneill@alliantenergy.com
Federal Regulatory Relations M
Alliant Energy Corporate Services,
Inc.
801 Pennsylvania Ave NW
Washington, D.C.  20004

Michael Pattwell                 mpattwell@clarkhill.com
Attorney
Clark Hill PLC
212 East Cesar E. Chavez Avenue
Lansing, MI 48906

Daniel Simon                     dsimon@clarkhill.com
Member
Clark Hill PLC
1001 Pennsylvania Ave NW
Suite 1300 South
Washington, D.C.  20004

Andrew M Jamieson                ajamieson@itctransco.com
Associate General Counsel, Reg
ITC Holdings Corp.
27175 Energy Way
Novi, MI 48377

Katie Gantley                    katie.gantley@bakerbotts.com
Ryan Norfolk                     ryan.norfolk@bakerbotts.com
Jay Ryan                         jay.ryan@bakerbotts.com
Baker Botts L.L.P.
700 K ST NW
Washington, D.C.  20001

Michael Engleman
Engleman Fallon, PLLC
1717 K Street NW
Suite 900
Washington, D.C.  20006

mengleman@efenergylaw.com

Sharon Segner
Vice President
LS Power Associates LP
1001 19th Street North
Suite 1200
Arlington, VA 22209

ssegner@lspower.com

Kelsey Bagot
Senior Attorney
NextEra Energy, Inc.
801 Pennsylvania Ave NW Ste 220
Washington, D.C. 20004

kelsey.bagot@nexteraenergy.com

James H. Holt, ESQ
Katherine Wade
Betts & Holt LLP
1100 17th St., NW
Suite 901
Washington, D.C. 20036

jhh@bettsandholt.com
kaw@bettsandholt.com

Kris Stubbs
Chief Administrative Officer
Resale Power Group of Iowa
PO Box 41565
Des Moines, IA 50311

kstubbs@rpgi.org

Kavita Maini
KM Energy Consulting LLC
961 North Lost Woods Road
Oconomowoc, WI 53066

kmaini@wi.rr.com